IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

GREGORY WILLIAM CHEVES,

Petitioner,

v.                                                  Criminal Action No. 4:12cr15
                                                      Civil Action No. 4:14cv19

UNITED STATES of AMERICA,

Respondent.

## OPINION AND ORDER

This matter is before the Court on pro se Petitioner Gregory William Cheves's ("Petitioner" or "Cheves") Motion to Vacate under 28 U.S.C. § 2255 ("Motion" or "§ 2255 Motion"), Doc. 51. After reviewing the record, the Court **FINDS** that no hearing is necessary because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the reasons stated herein, the Court **DENIES** Petitioner's Motion.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### a. Events Leading to Petitioner's Guilty Plea

On February 14, 2012, a seven count Indictment was filed in open court, charging Petitioner with three counts of Distribution of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), and four counts of Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2). Doc. 12. The Office of the Federal Public Defender was assigned to represent Petitioner, and Assistant Federal Public Defender Larry Dash served as his primary attorney. On

March 18, 2012, Petitioner through Mr. Dash filed his First Motion to Continue the Trial Date. Doc. 18. Counsel requested the continuance in order to perform a competency evaluation. Id. The Court granted this motion on April 2, 2012. Doc. 19. Petitioner alleges that Mr. Dash never informed Petitioner he was moving for this continuance. Doc. 57 at 3. Before the evaluation, the Government submitted a written plea offer to Petitioner. Doc. 57 at 3; see also Doc. 65-1 at 2. Petitioner alleges that Mr. Dash subsequently informed him that a competency evaluation might result in a more advantageous plea agreement. Doc. 57 at 3. However, the plea agreement did not change following the evaluation. Id.; see also Doc. 61 at 5. On May 3, 2012, the courtroom deputy scheduled a plea agreement hearing for May 9, 2012; however, the hearing was terminated the next day per the request of Mr. Dash. On May 7, 2012, Mr. Dash filed a Second Motion to Continue the trial date. Doc. 20. In this motion, Mr. Dash represented to the Court that Petitioner had always intended to plead guilty, but on May 4, Petitioner informed counsel he wished to have a full jury trial. Id. On May 8, 2012, the Court granted this motion. Doc. 21. That same day, the Government sent a letter to Mr. Dash, informing him that its written plea offer would remain open until noon on May 10, 2012. Doc. 65-1. The next day on May 9, a plea agreement hearing was set for May 10.

At the hearing, the Court conducted a lengthy examination of Petitioner and Mr. Dash. Doc. 61. Petitioner was sworn in by the clerk. Id. at 2. The Court confirmed that only one written plea offer, to one count of distribution of child pornography, was offered to Petitioner. Id. at 5. Petitioner advised the Court that he had an opportunity to discuss his case with his attorney, and that he was satisfied with counsel's representation and advice. Id. at 10. Petitioner further advised that he entered into the plea agreement after consulting with counsel and reviewing the plea agreement with counsel. Id. at 11. The Court specifically asked if anybody forced

Petitioner to sign the agreement, and he testified that no one had done so. Id. at 11–12. Mr. Dash advised the Court that he believed Petitioner wished to enter into the guilty plea. Id. at 13. Counsel further stated that he did not believe Petitioner had a meritorious defense. Id. at 16. Petitioner informed the Court he entered into this plea freely and voluntarily. Id. at 16–17. He advised he was entering into the plea because he was guilty of the crime charged. Id. at 17.

At the plea hearing, the parties entered a statement of facts concerning the offense conduct. In December 2011, an undercover law enforcement agent made contact with Petitioner over the Internet. Doc. 24 at 1. The agent was able to download fifty files from Petitioner's directory on a peer-to-peer file sharing program. Id. The agent also engaged in an online chat with Petitioner, in which Petitioner stated he was addicted to "kiddie porn" for fifteen years and that he would "like to get a real small one and really hurt him, maybe even kill." Id. In January 2012, another undercover agent accessed Petitioner's shared directory, and downloaded an additional hundred files. Id. at 2. A search warrant was obtained, and law enforcement agents searched Petitioner's residence on January 18, 2012. Id. at 2. The search revealed a computer manufactured outside the United States that had over 116,000 images of child pornography. Id. at 3. In an interview with agents, Petitioner admitted that he was engaging in inappropriate behavior, and that the content of his chats were based on fantasies, and that he had never acted out on his fantasies. Id. at 3–4.

The Court asked Petitioner if the statement of facts was true and accurate, and Petitioner answered that it was, subject to revisions he noted on the document. Doc. 61 at 18. Mr. Dash informed the Court that the facts contained within were consistent with his investigation and conferences with his client. Id. at 17–18. Accordingly, the Court found there was an independent basis in fact to find that Petitioner was guilty of the offense beyond a reasonable

doubt. Id. at 19. The Court found that the plea was entered freely and voluntarily, and the Court accordingly found Petitioner guilty of Count One of the Indictment. Id. The Court scheduled Petitioner's sentencing hearing for October 9, 2012. Id.

### b. Deterioration of Relationship Between Petitioner and Counsel

On July 18, 2012, Petitioner sent Mr. Dash a letter which stated in its entirety:

> Please be advised your services are terminated forthwith; you are to provide no further legal services on my behalf. Please provide me with a complete copy of my file sent to the address above.

Doc. 27-1. Mr. Dash then filed a Motion to Withdraw as counsel on July 27, 2012. Doc. 27. Mr. Dash represented that on several occasions, Petitioner expressed dissatisfaction with counsel. Id. at 1.

The Court held a hearing on the Motion to Withdraw on August 9, 2012. Doc. 28. At the hearing, Mr. Dash informed the Court that Petitioner made a complaint with the Virginia State Bar. Doc. 34 at 3. Mr. Dash also advised the Court that prior to the hearing, Petitioner refused to talk to him and co-counsel. Id.

Prior to explaining the reasons for his dissatisfaction with counsel, Petitioner was sworn in by the courtroom deputy. Doc. 34 at 2. Petitioner informed the Court that he was "not trying to deny my guilt whatsoever in this matter." Id. at 5. He stated that he even tried to plead guilty before a magistrate judge early in the proceedings. Id. Petitioner further averred that "I would actually like more time than is being offered to me, and the plea deal that was posed to me, I felt, was forced upon me by Mr. Dash." Id. at 5–6. Petitioner stated that Mr. Dash told him that if the case went to trial, the evidence would be shown in open court, that his family would be subpoenaed to testify against him, and that they would be shown the evidence in court. Id. at 6;

see also Doc. 57 at 3. Petitioner then stated that he then learned that these representations were false. Id. Regarding his failure to consult with Mr. Dash, Petitioner stated he "heard Mr. Dash say to the marshal, 'We will see who wins in this court.'" Id.

When the Court noted that Petitioner had previously testified under oath that he was not forced into the plea agreement, Petitioner responded that he lied under oath at his plea hearing. Doc. 34 at 7. The Court further noted that counsel could not predict accurately what would happen at a trial because it depends on how the case unfolds, and that different attorneys would have different opinions as to what would happen in any given case. Id. at 8. The Court granted Mr. Dash's Motion to Withdraw, and appointed Kevin P. Diamonstein as Petitioner's new counsel. Docs. 29, 30.

Prior to the sentencing hearing, the Probation Office ("PO") prepared a Presentence Investigation Report ("PSR") outlining Petitioner's offense conduct, which was initially filed on August 27, 2012. Doc. 32. Mr. Diamonstein filed a submission on September 20, 2012, indicating that there were no objections to the PSR. Doc. 35. Shortly thereafter, on September 24, Mr. Diamonstein filed a Motion to Withdraw as counsel. Doc. 36. Mr. Diamonstein represented that on September 20 he learned that Petitioner's family had retained Gary C. Byler to represent Petitioner at his sentencing hearing. Id. at 2.

The Court held a hearing on Mr. Diamonstein's motion on October 2, 2012. Doc. 41. The Court did not allow Mr. Diamonstein to withdraw from the case, as sentencing was scheduled for the next week. Doc. 62 at 4. The Court did, however, allow Mr. Byler to note his appearance in the case, and instructed Mr. Diamonstein to offer any assistance necessary to help assist Mr. Byler in his preparation for sentencing. Id. at 5–6.

### c. Sentencing

The parties appeared for Petitioner's sentencing hearing on October 9, 2012. Doc. 43. Prior to the hearing, no counsel for Petitioner filed a position paper. At the hearing, Mr. Byler first highlighted the differences between Petitioner and Mr. Dash, informing the Court that Mr. Dash did not inform Petitioner he was seeking the first continuance in this case for a competency evaluation.[1] Doc. 63 at 2–3. Mr. Byler asked the Court for a thirty-day continuance, for the purpose of getting an independent evaluation as a potential basis for a downward variance motion. Id. at 3–4. Mr. Byler further informed the Court that Mr. Diamonstein never met with Petitioner until after Petitioner's family first contacted Mr. Byler. Id. at 4; see also Doc. 57 at 4.

Mr. Diamonstein informed the Court that he had the PSR delivered to Petitioner once it was prepared. Doc. 63 at 6. He also stated that he had "been with him a couple of times." Id. He stated that he wasn't aware of "[s]ome of this other information relative to his emotional state, age and some other issues relative to a possible downward departure[.]" Id. The Government did not oppose the motion to continue sentencing, expressing "concern that the defense attorneys are not prepared." Id. at 7. The Court granted the motion and continued the sentencing hearing. Doc. 44.

Mr. Byler filed another position paper on November 1, 2012, again indicating no objections to the PSR. Doc. 45. Mr. Byler, though, did file a paper asking that the Court consider a downward variance. Doc. 46. Counsel ultimately did not file a report concerning Defendant's emotional and mental condition.

---

[1] Mr. Byler informed the Court that Mr. Dash thought this was a prudent, given Petitioner's indication that he wanted the maximum sentence. Doc. 63 at 5.

6

On February 5, 2013, Petitioner appeared before the Court for his sentencing, and Petitioner was sworn in by the clerk. The Court noted that he did not lodge any objections to the PSR. Doc. 64 at 1. When asked by the Court, Petitioner stated that he reviewed the PSR with his attorney, and that the PSR accurately stated the offense conduct. Id. at 2. The Court granted the motion for a variant sentence, and sentenced Petitioner to one hundred and forty-four (144) months imprisonment, lifetime supervised release, and a $100 special assessment. Doc. 48. Petitioner's Judgment was entered on February 8, 2013. Id. Petitioner did not appeal the judgment of this Court.

### d. Procedural History

Petitioner filed the instant Motion on February 21, 2014. Doc. 51. On May 12, 2014, the Court ordered the Government to respond to Petitioner's Motion. Doc. 54. On July 11, 2014, Petitioner filed a "Supplemental Brief and Memorandum of Law." Doc. 57. Because Petitioner asked the Court to recognize his pro se status and asked the Court to excuse his failure to follow technical requirements, the Court construed his submission as a request for leave to file, and granted Petitioner leave to file his brief. Doc. 58. The Government filed its Response in Opposition ("Opposition") on September 10, 2014.[2] Doc. 42. Petitioner filed his Reply on October 16, 2014.[3] Doc. 68.

## II. LEGAL STANDARD

Section 2255 is designed to correct fundamental constitutional or jurisdictional errors, which would otherwise "'inherently result[] in a complete miscarriage of justice.'" United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

---

[2] On July 7, 2014 and July 25, 2014, the Court entered Orders extending the time for the Government to file its Opposition. Docs. 56, 60.
[3] On September 30, 2014, the Court entered an Order extending Petitioner's time to file his Reply brief. Doc. 67.

In order to move the Court to vacate, set aside or correct a sentence under § 2255, a petitioner must prove that one of the following occurred: (1) that his "sentence was imposed in violation of the Constitution or laws of the United States;" (2) that the Court was without jurisdiction to impose such a sentence; (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner bears the burden of proving his grounds for collateral review of his sentence by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958); Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

The scope of a § 2255 collateral attack is far more limited than an appeal, and thus a "collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id. at 167. Although the doctrine of procedural default generally bars claims not previously raised, a freestanding claim of ineffective assistance of counsel may be properly asserted for the first time in a § 2255 petition. United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991). Generally, an evidentiary hearing is required under 28 U.S.C. § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. United States v. Witherspoon, 231 F.3d 923, 925–26 (4th Cir. 2000); see also 28 U.S.C. § 2255(b).

### III. ANALYSIS

Petitioner brings forth three grounds in support of his Motion. First, he argues that Mr. Dash provided ineffective assistance of counsel at the plea bargaining stage of the proceeding. Doc. 51 at 4. Second, Petitioner states that counsel was ineffective in objecting to the file share

folder enhancement and in failing to object to the number of photos. Doc. 51 at 5. Third, Petitioner argues that his lifetime term of supervised release violates the Eighth Amendment. Doc. 51 at 6–7. The Court will address each of these contentions in turn.

### a. Ineffective Assistance of Counsel

Petitioner must meet the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The first prong requires that Petitioner "'show that counsel's representation fell below an objective standard of reasonableness.'" Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000) (quoting Strickland, 466 U.S. at 688). Petitioner's counsel is entitled to a "'strong presumption'" that his strategy and tactics fell "'within the wide range of reasonable professional assistance.'" United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (quoting Strickland, 466 U.S. at 689). The objectiveness of counsel's assistance is based on counsel's perspective at the time of the alleged error and in light of all the circumstances, under a "highly deferential" standard. Roane, 378 F.3d at 404–05 (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)).

The second prong of the Strickland test requires that Petitioner demonstrate prejudice by showing "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Bacon, 225 F.3d at 478 (quoting Strickland, 466 U.S. at 694). This requires that Petitioner show a "'probability sufficient to undermine confidence in the outcome.'" Roane, 378 F.3d at 405 (quoting Strickland, 466 U.S. at 694). Petitioner's failure to satisfy either of the two prongs renders it unnecessary to consider the other prong. Roane, 378 F.3d at 404.

In the Fourth Circuit, there are three discrete situations where per se Strickland prejudice occurs. Lentz v. Washington, 444 F.3d 295, 303 (4th Cir. 2006). First, there is the situation where a lawyer is absent at a critical stage of the proceedings. Id. Second, there is a constructive

denial of counsel, where counsel "fails to subject the prosecution's case to meaningful adversarial testing and thus might as well be absent from the proceedings." Id. at 303–04 (internal quotation marks and citation omitted). Finally, there is the situation where circumstances exist that "the likelihood that any lawyer ... could provide effective assistance is so small that a presumption of prejudice is appropriate ..." Id. at 304.

When asserting an ineffective assistance claim in the context of a guilty plea, the second prong of the Strickland test becomes whether "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Field v. Attorney General of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992).

In his Motion, Petitioner asserts different acts of counsel at the plea bargaining stage and at the sentencing stage that show ineffective assistance. The Court will address each contention in turn.

### 1. Plea Bargaining Phase

In his initial filing, Petitioner identified six acts that support his claim of ineffective assistance of counsel at the plea bargaining phase: (1) Mr. Dash did not fully explain the pros and cons of pleading; (2) Mr. Dash did not fully review what length of time Petitioner could spend incarcerated; (3) Mr. Dash did not provide an explanation of the Sentencing Guidelines; (4) Mr. Dash forced him to take a plea deal; (5) Mr. Dash failed to review the evidence with him; and (6) Mr. Dash failed to make sure there was no double counting of photos. Doc. 51 at 4. In his supplemental submission, Petitioner focused mainly on two points: (1) the alleged

misrepresentations that Mr. Dash made concerning whether the evidence would be shown in open court and that his family would be called to testify against him, and (2) Mr. Dash's failure to object to a five-level enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2G2.2(b)(3)(B). Doc. 57 at 6–12.

The Government argues that all of the points in his initial submission are contradicted by the record. Doc. 65 at 14. Moreover, the Government argues that the events that Petitioner identifies as "coercive" were not in fact so. Id. at 15. Even if counsel acted improperly in telling Petitioner his family would be forced to view the evidence in open court, the Government argues that Petitioner could still not establish prejudice because he was in fact guilty. Id. at 17.

The Government is correct that many of these claims are contradicted by the sworn statements made at Petitioner's Rule 11 plea hearing. Accordingly, Petitioner must show "extraordinary circumstances" to contradict these statements. United States v. Lemaster, 403 F.3d 216, 221–22. Petitioner alleges that Mr. Dash did not fully explain the pros and cons of pleading, yet at the plea hearing Petitioner informed the Court that he thoroughly reviewed the agreement with Mr. Dash before the hearing. Doc. 61 at 11. Petitioner now claims that Mr. Dash failed to review the evidence with him, but at the plea hearing he informed the Court that he had an opportunity to discuss all of the facts of his case with Mr. Dash. Id. at 10. Moreover, Petitioner now claims he was forced to accept the plea deal, but he told the Court at his plea hearing that this was not the case. Id. at 11–12. Additionally, accepting Petitioner's allegations as true that Mr. Dash did not review Petitioner's potential length of incarceration or explain the Guidelines, Petitioner cannot show prejudice under Strickland because the Court reviewed the minimum and maximum sentence under the statute, and explained that it could not predict his

sentence because the Court could not say what his advisory guideline range would be.[4] United States v. Weymouth, 256 F. App'x 645, 649 (4th Cir. 2007) (citing United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc)).

Petitioner attempts to show extraordinary circumstances in two ways: (1) that he did not learn Mr. Dash acted improperly in advising him that the evidence would be shown in open court and that his family would be called to testify against him until after his Rule 11 hearing and (2) he testified under oath before the Court that he lied under oath at the Rule 11 plea hearing in saying he wasn't forced into entering the plea agreement. However, this is not sufficient to warrant relief. Petitioner already brought both arguments to the Court's attention at the August 9 Motion to Withdraw hearing. As the Court stated at the hearing:

> If you go around and ask different lawyers what's going to happen in a case, you are going to get a different opinion. Some say, oh no, the evidence won't be shown to anyone. They don't know that. They can't predict that. The only thing a reasonable, seasoned lawyer can do is tell you what the potential possibilities are. And I can tell you that no one can predict whether that evidence would have to be shown to a witness on the stand or that a member of your family might be called in the case. It all depends on how the case unfolds. So no one out there can predict and tell you, oh, that's not going to happen.

Doc. 34 at 8. Thus, Mr. Dash acted reasonably in informing Petitioner that the evidence could be shown in open court, and that his family may have been called as a witness.[5]

Additionally, when Petitioner attempted to assert at the August 9 hearing that he lied under oath, the Court noted that:

> You just took another oath to say you lied under oath, but the simple truth is, you were questioned very clearly and asked about whether anybody forced you into the

---

[4] Moreover, after the Court explained the advisory nature of the Guidelines and that neither the Court nor counsel could predict what his sentence would be, Petitioner answered that he had the opportunity to discuss all the facts with Mr. Dash, and that he was satisfied with Mr. Dash's representation and advise. Doc. 61 at 8–10.

[5] Furthermore, the Government points out that it would have shown the evidence if the case had gone to trial, and thus Petitioner suffered no Strickland prejudice even if counsel provided ineffective assistance of counsel in offering this advice. Doc. 65 at 17 n.1.

12

> plea agreement, asked you whether this plea agreement was your own decision. So you are not going to be able to go back and recant now and say that you were forced.

Doc. 34 at 7. Petitioner then stated that "That's fine. Even if I can't recant it—." Id. Thus, the "extraordinary circumstances" required to undo his sworn statements at his Rule 11 colloquy do not exist. Moreover, even if counsel was ineffective by "misrepresenting" what would happen at trial, Petitioner stated under oath that he was not trying to deny his guilt whatsoever in the matter and that he tried to plead guilty before the magistrate judge; accordingly, Petitioner suffered no Strickland prejudice because this contradicts his argument that he would have proceeded to go to trial. Hooper, 845 F.2d at 475. Therefore, the Court **FINDS** that Petitioner was not denied the effective assistance of counsel at the plea bargaining phase.[6]

### 2. Sentencing Phase

Petitioner next alleges that Mr. Byler provided ineffective assistance of counsel at the sentencing phase. First, he alleges that Mr. Byler was ineffective in failing to object to the five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B). Doc. 57 at 12. Second, he alleges that counsel was ineffective in objecting to the number of photos. Doc. 51 at 5. The Government argues that the five-level enhancement was appropriate. Doc. 65 at 20.

These alleged errors were not raised on direct review. "In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he

---

[6] Petitioner brought forth two additional claims relating to Mr. Dash's ineffective assistance, failure to ensure there was no double counting of photos and failure to object to a five-level enhancement under U.S.S.G. § 2G2.2(b)(3)(B). Doc. 51 at 4. However, these appear to go to the sentence that Petitioner received, and thus the Court will consider these arguments in addressing the alleged ineffective assistance of counsel at the sentencing phase. To the extent that this claim goes to Petitioner's plea of guilty, Petitioner only pleaded guilty to a single count of the Indictment, and the possession or transmission of a single picture is a unit that can be charged separately. See United States v. Woerner, 709 F.3d 527, 538–41 (5th Cir. 2013). Thus, he could have suffered no prejudice under Strickland even if counsel were ineffective in failing to attack the Indictment based on these arguments.

complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999). The existence of an appeal waiver in a plea agreement, as exists here, precludes Petitioner from "'raising claims that are the sort that could have been raised on appeal'" absent a showing of cause to excuse the procedural default. Ashlock v. United States, No. 4:11cr49, 2013 WL 5275908, at *7 (E.D. Va. Sept. 19, 2013) (quoting United States v. Under, 552 F.3d 391, 396–397 (4th Cir. 2009)). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Mikalajunas, 186 F.3d at 493.

In support of his claim regarding the enhancement under U.S.S.G. § 2G2.2(b)(3)(B), Petitioner argues that cause exists because counsel was ineffective in failing to object, as he instructed counsel to object and a case presenting a similar issue was pending before the Fourth Circuit at the time of his sentencing. Doc. 57 at 12. First, Petitioner's allegation that he instructed counsel to object does not stand because he swore under oath at the sentencing hearing that he reviewed the PSR and answered in the affirmative that his Guidelines were correctly calculated. Doc. 64 at 3. Second, the case Petitioner cites, United States v. McManus, 734 F.3d 315 (4th Cir. 2013), was decided after Petitioner was sentenced. As the Government correctly points out, "'an attorney's failure to anticipate a new rule of law [is] not constitutionally deficient.'"[7] United States v. Dyess, 730 F.3d 354, 363 (4th Cir. 2013) (quoting United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 2010)).

---

[7] Additionally, an error in calculating the sentencing guidelines is not normally cognizable in a § 2255 motion absent a miscarriage of justice. Mikalajunas, 186 F.3d at 496. Assuming arguendo that counsel was ineffective in failing to raise the objection, at a minimum the two-level enhancement would have applied in this case because Petitioner at least passively allowed others to access his account containing child pornography passively. McManus, 734 F.3d at 319. Thus, assuming that Petitioner is correct that McManus applied to his case, his offense level would be

Second, Petitioner argues counsel was ineffective in failing to object to the number of photos, alleging double counting. Doc. 51 at 5. However, Petitioner cannot show cause to excuse his procedural default, as counsel was not ineffective in failing to object to any of the enhancements. "An adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines expressly exclude its applicability." United States v. Williams, 954 F.2d 204, 207 (4th Cir. 1992). In this case, five enhancements for specific offense characteristics were applied under U.S.S.G. § 2G2.2(b): (1) subsection (2); (2) subsection (3)(B); (3) subsection (4); (4) subsection (6); and 5 subsection (7)(D).[8] Doc. 37 at 21. None of these enhancements in combination result in impermissible double counting.

Moreover, to the extent that Petitioner is objecting to "double counting" in the sense that the files downloaded on December and January were duplicative, U.S.S.G. § 2G2.2(b)(7)(D), the highest enhancement, applies if there were over 600 images. The Statement of Facts identified over 116,000 images. Thus, counsel was not ineffective for failing to file a frivolous objection to the number of images.

Accordingly, the Court **FINDS** that counsel was not ineffective by failing to lodge any objections to the PSR.[9]

---

three-levels lower, his advisory Guidelines range would have been 168-210 months, higher than the sentence he actually received. Doc. 65 at 20. Therefore, he cannot show a miscarriage of justice with this alleged error, nor can Petitioner show that "but for" the alleged ineffective assistance of counsel, the outcome of his sentencing proceeding would have been different. Bacon, 225 F.3d at 478.

[8] The 2011 Federal Sentencing Guidelines Manual was used in this case.

[9] Although not specifically alleged by Petitioner as constituting ineffective assistance of counsel, Petitioner notes that he was not contacted by a "pro bono attorney" after the Court granted Mr. Dash's Motion to Withdraw. Doc. 57 at 4. This was brought to the Court's attention at the October 9 hearing, and the Government expressed concern that defense counsel was unprepared for the sentencing scheduled for that day. Doc. 63 at 4–8. Assuming that Petitioner is correct that Mr. Diamonstein made no attempt to contact him and thus provided ineffective assistance of counsel, Petitioner suffered no prejudice because the Court granted a continuance to allow Mr. Byler time to explore potential grounds for a downward variance, curing any failure on the part of Mr. Diamonstein to do so, and in fact, the Court ultimately granted Mr. Byler's request for a downward variance.

### b. Eighth Amendment violation

Petitioner's final argument brought forth in his Motion is that his lifetime term of supervised release constitutes cruel and unusual punishment in violation of the Eighth Amendment, as he was a first-time, non-violent offender. Doc. 51 at 6.

An argument that a sentence violates the Eighth Amendment can also be procedurally defaulted. United States v. Finnell, 256 F. Supp. 2d 493, 496–97 (E.D. Va. 2003). Petitioner has not made an argument that counsel was ineffective in failing to raise this argument, and as discussed above, Petitioner did not appeal his sentence. Moreover, the Fourth Circuit has held that "proportionality review is not available ... 'for any sentence less than life imprisonment without the possibility of parole.'" Id. at 497 (quoting United States v. Ming Hong, 242 F.3d 528, 532 (4th Cir. 2001)). Petitioner's arguments focus solely on the proportionality of his lifetime supervised released compared to the severity of his offense and compared to other offenses. Doc. 57 at 15–19. Thus, even if Petitioner's claims are not procedurally defaulted, the Fourth Circuit does not allow for proportionality review in a situation such as this.[10] Accordingly, this argument does not provide Petitioner any relief.

### IV. CONCLUSION

For the above stated reasons, the Court **DENIES** Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Prisoner in Federal Custody, Doc. 51.

Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural issue, a certificate of appealability is also

---

[10] Moreover, while the Fourth Circuit has not addressed the exact claim that Petitioner raises, other circuits have found that lifetime supervise release does not violate the Eighth Amendment for child pornography offenses. United States v. Williams, 636 F.3d 1229, 1233 (9th Cir. 2011); United States v. Moriarty, 429 F.3d 1012, 1025 (11th Cir. 2005) (per curiam). The Fourth Circuit has upheld lifetime supervised release terms against reasonableness attacks. See, e.g., United States v. Gilbert, 425 F. App'x 212 (4th Cir. 2011); United States v. Hayes, 404 F. App'x 753 (4th Cir. 2010).

**DENIED.**

Petitioner is **ADVISED** that he may appeal this Order by forwarding a written notice of appeal to the Clerk, United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the Clerk within sixty (60) days from the date of this Order. To proceed in forma pauperis on appeal, Petitioner must submit an application to proceed in forma pauperis to the Clerk, United States Court of Appeals for the Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **REQUESTED** to send a copy of this Order to Petitioner and to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 7th, 2014